Jessica N. KELSO

v.

David DECKER.

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Dec. 5, 2007 Session.

Jan. 7, 2008.

Permission to Appeal Denied by
Supreme Court June 23, 2008.

Thomas M. Parker and Stanley F. La-
Duke, Knoxville, Tennessee, for the Appel-
lant, David Decker.

F.D. Gibson III, Maryville, Tennessee,
for the Appellee, Jessica N. Kelso.

### OPINION

D. MICHAEL SWINEY, J., delivered
the opinion of the court, in which
HERSCHEL P. FRANKS, P.J., and
SHARON G. LEE, J., joined.

This appeal involves a jurisdictional dis-
pute concerning modification of the par-
ties' child custody arrangement. David
Decker ("Father") and Jessica N. Kelso
("Mother") were divorced in Ohio. Mother
then moved to Tennessee with the parties'
daughter. Post-divorce litigation contin-
ued in Ohio. Mother filed a petition in the
Tennessee court to register a September 9,
2003, judgment entered by the Ohio court
and also then to modify co-parenting time.
Father did not respond to the motion or
enter an appearance before the Tennessee
court. However, Father did file a motion
in the Ohio court regarding visitation and
contempt issues, and Mother responded by
denying that the Ohio court had subject
matter jurisdiction. The Ohio court held a
hearing on Father's motion after communi-
cating with the Tennessee court regarding
the petition filed by Mother in Tennessee,
and the parties entered into a consent
agreement in the Ohio court after this
hearing. The Tennessee court then held a
hearing on Mother's petition. After this
hearing, the Tennessee court entered a
default judgment against Father register-

ing the Ohio judgment and modifying Father's visitation by adopting a new permanent parenting plan proposed by Mother. Mother later filed a motion for relief from the Ohio court's judgment entered as a result of her consent agreement with Father. The Ohio court issued a detailed opinion denying Mother's motion and stating that the Ohio court retained jurisdiction of the parties' custody matters and did not relinquish jurisdiction to Tennessee. Less than one year after the Tennessee judgment was entered, Father filed a Rule 60.02 motion in the Tennessee court, arguing that the Tennessee judgment was void for lack of subject matter jurisdiction. The Trial Court overruled Father's Rule 60.02 motion as being untimely. Father appeals. We find that Father's motion was timely filed, and therefore, the Trial Court erred by overruling the motion on that basis. Consequently, we reverse the order of the Trial Court overruling Father's Rule 60.02 motion. Furthermore, we hold that Father is entitled to post-judgment relief because the portion of the Trial Court's judgment modifying visitation was void for lack of subject matter jurisdiction. We affirm the Trial Court's registration of the Ohio Court's judgment but vacate the remainder of the Trial Court's judgment.

## I. Background

Mother and Father were married in Ohio in 1998. They are the parents of one child, a daughter born on July 5, 2000 ("Daughter"). In 2002, the parties were divorced pursuant to a Final Decree of Divorce entered by the Common Pleas Court of Lucas County, Ohio, Domestic Relations Division ("the Ohio Court"). Mother was awarded primary custody of Daughter with Father having scheduled

visitation. Mother subsequently relocated to Tennessee with Daughter. Father continues to reside in Ohio. The parties participated in various post-divorce matters in the Ohio Court regarding visitation issues and Mother's removal of the Daughter from Ohio.

On October 1, 2004, Mother filed a Petition to Register Foreign Judgment in Blount County Circuit Court ("the Trial Court"), asking the Trial Court to register an Ohio judgment entered on September 9, 2003, and then to modify Father's visitation schedule with Daughter in accordance with a proposed permanent parenting plan filed by Mother. Although Father was properly served, he did not appear before the Trial Court or otherwise defend the action.

On January 11, 2005, Father filed a motion in the Ohio Court regarding visitation and contempt issues. Mother filed a response contesting the jurisdiction of the Ohio Court based on the fact that Daughter now resides in Tennessee. The Ohio Court and the Trial Court communicated regarding the pleadings filed by Mother and Father in Ohio and Tennessee, although a transcript of that conversation does not appear in the record. However, the Ohio Court referred to that dialogue during its May 4, 2005, hearing on Father's motion, as follows [1]:

> [The Ohio Court]: With regard to the Motion to Contest Jurisdiction, that for further proceedings will be dealt with in [sic] as a corollary to the Motion to have Jurisdiction Transferred to Tennessee. I do not remember the Judge's name—Judge Young.
>
> * * *
>
> [The Ohio Court]:—has been contacted by this Court and has indicated that he

---

**1.** The transcribed material appears in the Ohio Court's judgment entered on September 21, 2005, which we will discuss in greater detail later in this Opinion.

at the conclusion of these proceedings will make a determination as to whether or not he wished to accept jurisdiction. Should he so desire to accept jurisdiction of the UCCJA, [Father's counsel], you will then be provided opportunity to brief the issue as to whether or not we should release jurisdiction.

[Father's counsel]: Thank you.

[The Ohio Court]: The primary step being that he must determine that he must accept jurisdiction before we can determine that we will release jurisdiction. So that will be your issue in Tennessee, okay. Everybody understand.

During the May 4, 2005, hearing in the Ohio Court on Father's motion, the parties entered into a consent agreement to resolve the issues before the Ohio Court. A judgment was entered on May 25, 2005, on the consent agreement.

The Trial Court held a hearing on Mother's Petition to Register Foreign Judgment on May 20, 2005, shortly after the Ohio Court's hearing on Father's motion. The Trial Court entered a default judgment against Father after finding "[t]hat no appearance, opposition, defense, or pleading required by Tennessee law has been filed with the Court as of the date of this hearing."[2] The Trial Court stated the following regarding its jurisdiction to modify Father's co-parenting time:

12. That the State of Tennessee has had exclusive jurisdiction over the minor child and all issues concerning co-parenting time, custody, and support since October 1, 2004 under both Tennessee law ... and Ohio law....

* * *

15. That under Tennessee law and Ohio law the State of Ohio was an inconvenient forum and had no personal jurisdiction over the [Mother] and minor child as of October 1, 2004....

16. That under the facts in existence on October 1, 2004 that no other state would have jurisdiction over the subject matter or parties except the State of Tennessee.

The Trial Court then proceeded to register the Ohio Court's September 9, 2003, judgment. The Trial Court also found a material change of circumstances and adopted Mother's proposed permanent parenting plan, which significantly modified Father's visitation with Daughter. Lastly, the Trial Court awarded Mother attorney fees in the amount of $1,500 and ordered Father to pay the court costs. A judgment to this effect was entered on May 24, 2005.

The Trial Court's finding of jurisdiction fueled additional litigation in Ohio. On June 10, 2005, Mother filed a Motion to Vacate the Judgment entered on May 25, 2005, by the Ohio Court. She based her motion to vacate the consent agreement on the Ohio Court's alleged lack of jurisdiction. The Ohio Court summarized Mother's argument as follows: "According to [Mother], once the minor child's 'home state' is no longer the state of Ohio, this Court lost jurisdiction over the case and no longer has subject matter jurisdiction."

On September 21, 2005, the Ohio court entered a judgment denying Mother's motion to vacate. After a thorough analysis, the Ohio Court concluded that it "has exclusive continuing jurisdiction over its orders relating to the custody, care, and support of the minor child of the parties." The Ohio Court further stated:

---

2. The record shows that Father's counsel in Ohio attempted to fax a request for a continuance to the Trial Court. The Trial Court stated "[t]hat said attorney is not licensed in the State of Tennessee and the request was not in proper form as required by [the] Tennessee Rules of Civil Procedure and therefore could not be considered by the Court."

Contrary to [Mother]'s claims, this Court further finds that Tennessee lacked jurisdiction to modify the September 9, 2003 Judgment Entry issued by this Court in Ohio because the [Father] still resides in Lucas County, Ohio, other contacts exists [sic] between the child, the child's family and the State of Ohio and this Court did not relinquish its exclusive continuing jurisdiction to the Circuit Court for Blount County, Tennessee.

The Ohio Court denied Mother's motion to vacate and stated "that the [Ohio] Court shall continue to retain jurisdiction until a motion to transfer is filed and a hearing on the motion is held."

On May 23, 2006, Father filed with the Trial Court a Motion to Set Aside Judgment, Motion to Alter or Amend Judgment and/or Motion for Relief from Order pursuant to Tenn. R. Civ. P. 60.02 (the "Rule 60.02 Motion") and an accompanying affidavit. In his Rule 60.02 Motion, Father asserted that:

[T]he [Ohio Court] is the court of original jurisdiction regarding issues of child custody and that the Ohio Court has never relinquished jurisdiction, and therefore under [the] law of the State of Tennessee, the Ohio [C]ourt retains jurisdiction for purposes of [c]hild custody determination, and the Judgment of this Court of May 25, 2005 is void due to lack of subject matter jurisdiction.

By order entered March 9, 2007, the Trial Court overruled Father's Rule 60.02 Motion on the sole basis that it was "not timely filed." Father appeals.

## II. Discussion

Father presents two issues for our review:

1. Whether the Trial Court erred by dismissing Father's Rule 60.02 Motion on the basis that the motion was not timely filed.

2. Whether the Trial Court erred by not setting aside its judgment entered on May 24, 2005.

We review a Trial Court's grant or denial of a motion for relief from judgment pursuant to Tenn. R. Civ. P. 60.02 under an abuse of discretion standard. *Rogers v. Estate of Russell,* 50 S.W.3d 441, 444 (Tenn.Ct.App.2001). Our Supreme Court discussed the abuse of discretion standard in *Eldridge v. Eldridge,* stating:

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001) (internal citations omitted). However, the question of whether a Rule 60.02 motion has been filed within a reasonable time after entry of judgment is a question of fact. *Rogers,* 50 S.W.3d at 445. We review a trial court's determination of facts *de novo* with a presumption of correctness, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R.App. P. 13(d); *Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn. 2001).

In order to conduct a proper review of this case, we first must determine whether Father's Rule 60.02 Motion was filed timely. If the motion was timely, we then will determine whether Father has demonstrated that he is entitled to post-judgment relief. *Pittman v. Pittman,* Nos. 01–A–

01–9301–CH00014, 87–077, 1994 WL 456348, at *2 (Tenn.Ct.App., Aug.24, 1994).

## A. Rule 60.02 Motion

■ Father's Rule 60.02 Motion relied on subsections (1), (3), and (5) as the basis for his assertion that the Trial Court should vacate its May 24, 2005, order. Rule 60.02 of the Tennessee Rules of Civil Procedure provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect; ...

(3) the judgment is void; ... or

(5) any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Tenn. R. Civ. P. 60.02.

The Trial Court justified its order overruling Father's Rule 60.02 Motion on its finding that the motion was not timely filed. Father filed the motion on May 23, 2006, just less than one year after the judgment was entered on May 24, 2005.

Rule 60.02 provides that the motion "shall be made within a reasonable time" and sets a one-year maximum time limit for motions made pursuant to subsections (1) and (2). Given the complicated factual and procedural posture of this case, particularly the extensive proceedings that continued in the Ohio Court during this entire time, we find that the evidence preponderates against the Trial Court's decision that the motion was not filed within a reasonable time as to Rule 60.02(1).

Regarding Rule 60.02(3) motions alleging that a judgment is void, we have stated that "except for exceptional circumstances that might require a different rule, Tenn. R. Civ. P. 60.02's reasonable time limitation does not place a time limit on the right to challenge a judgment on the ground that it is void." Pittman, 1994 WL 456348, at *2. The Trial Court did not set forth any facts justifying a deviation from our normal rule, and we find none in the record. Therefore, we hold that the Trial Court erred by finding that the Rule 60.02(3) motion claiming the judgment was void was not timely filed. Consequently, the Trial Court erred by overruling Father's Rule 60.02 Motion for lack of timeliness.

## B. Post–Judgment Relief

■ Having concluded that Father timely filed his Rule 60.02 Motion, we next address the issue of whether Father has demonstrated that he is entitled to post-judgment relief.

Father maintains that the Trial Court's May 24, 2005, judgment is void because the Trial Court lacked subject matter jurisdiction to modify the Ohio Court's order regarding visitation. We agree. Tennessee Code Ann. § 36–6–218 provides as follows regarding this issue:

Except as otherwise provided in § 36–6–219 [regarding temporary emergency jurisdiction], a court of this state may not modify a child-custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under § 36–6–216(a)(1) or (2), and:

(1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under § 36–6–217 or that a court of this state would be a more convenient forum under § 36–6–221; or

(2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

Tenn.Code Ann. § 36–6–218. The Official Comment to this statute further provides in pertinent part as follows:

The modification State is not authorized to determine that the original decree State has lost its jurisdiction. The only exception is when the child, the child's parents, and any person acting as a parent do not presently reside in the other State. In other words, a court of the modification State can determine that all parties have moved away from the original State.

Tenn.Code Ann. § 36–6–218, official cmt. The parties do not dispute that Father has remained a resident of Ohio at all times relevant to this action. Therefore, subsection (2) of Tenn.Code Ann. § 36–6–218 is not applicable to the facts before us and cannot be used to confer jurisdiction of this matter upon a Tennessee court. Subsection (1) focuses on whether the "court of the other state," the Ohio Court in this case, has retained jurisdiction. A careful reading of the Ohio Court's September 21, 2005, judgment convinces us that the Ohio Court maintained exclusive and continuing jurisdiction of the parties' custody dispute, and that the Ohio Court has not relinquished its jurisdiction to Tennessee. In fact, the Ohio Court stated just that in its September 21, 2005, judgment: "[T]his Court did not relinquish its exclusive continuing jurisdiction to the Circuit Court for Blount County, Tennessee." Furthermore, the Ohio Court specifically held, in its view at least, that the Trial Court lacked jurisdiction to modify the parties' visitation arrangement with Daughter.

Tennessee law does not permit a court in this state, given these facts, to determine when another state has lost jurisdiction of a child custody dispute, except in circumstances not applicable here. Tennessee law instead requires the Tennessee court to allow the rendering court to determine whether it continues its exclusive jurisdiction. Further support for this proposition can be found in our holding in *Cliburn v. Bergeron*, Nos. M2002–01386–COA–R3–CV and M2001–03157–COA–R3–CV, 2002 WL 31890868 (Tenn.Ct.App.M.S., Dec. 31, 2002), whose facts are analogous to the situation before us. In *Cliburn*, the parties were divorced in Louisiana. Mother was awarded custody of their son, G.B., and Father was ordered to pay child support and alimony. Two months after the divorce, Mother gave birth to a daughter, A.M.B. *Id.* at *1. Father filed a petition in Louisiana to establish that he was not the father of A.M.B. The Louisiana trial court ordered Mother and A.M.B. to submit to blood testing to determine the child's paternity, although that never took place. *Id.* A subsequent order of the Louisiana trial court granted Mother sole custody of G.B. and granted Father visitation. *Id.* Father later filed a petition in Louisiana to modify custody and support, followed by a motion for contempt. *Id.* at *2.

Sometime after the divorce, Mother moved to Tennessee with the children. She then filed a petition in a Tennessee court to enroll the Louisiana divorce decree and subsequent orders; to modify Father's visitation schedule; and for additional relief. *Id.* Mother later filed a Motion for Default Judgment, and Father entered a limited appearance to contest the Tennessee court's jurisdiction. *Id.*

In the meantime, the Louisiana court, "with knowledge of the pending litigation in Tennessee," held a hearing on Father's petition to modify custody and support, after which the Louisiana trial court granted Father sole custody of G.B. *Id.* The

Tennessee trial court later found that it did not have jurisdiction to modify the Louisiana court's custody determination and dismissed Mother's petition. *Id.* at *3–4. We affirmed the Tennessee court's judgment, stating as follows regarding Mother's request for modification of the Louisiana court's custody decree:

As the trial court herein held, the Tennessee court must look to the rendering court, in this case Louisiana, for that court's determination of whether it has continuing, exclusive jurisdiction.

The Louisiana court has made no such determination. Father, still a resident of Louisiana, initiated proceedings in Louisiana seven months after Mother removed their son to Tennessee. Mother initiated the proceedings involved in this appeal before the Louisiana court ruled on Father's petition. The Louisiana court subsequently modified its earlier custody determination with the knowledge that there were proceedings ongoing in Tennessee when it awarded custody of G.B. to Father in July of 2001.... The technical record from Louisiana was certified to the Tennessee trial court and shows that the same case number has been used throughout the litigation between Mother and Father from 1996 onward. Not only has the Louisiana court failed to find it does not have continuing jurisdiction, it has refused to do so.

The trial court herein applied the correct statute and analysis in determining whether it had jurisdiction to modify the prior Louisiana order. We affirm the decision of the trial court that it lacked jurisdiction to modify the child custody decree issued by Louisiana granting custody of G.B. to Mother because Louisiana has continuing exclusive jurisdiction.

*Id.* at *10.

As in *Cliburn,* this case deals with a divorce and custody decree entered in a state other than Tennessee with one parent still residing in the other state and the other parent having subsequently moved to Tennessee with the parties' child. The parent in Tennessee files a motion to register the other state's decree and to modify visitation. Litigation also continues in the other state, and that other state's court continues to exercise jurisdiction over the parties' disputes and refuses to relinquish jurisdiction to the Tennessee court. We affirm our holding in *Cliburn* that, under these circumstances described above, Tenn.Code Ann. § 36–6–218 provides that a Tennessee court does not have jurisdiction to modify the other state's child custody decree. Therefore, the Trial Court erred in concluding that the Ohio Court had lost jurisdiction of the case and further erred by then modifying Father's co-parenting time.

Although the Trial Court did not have jurisdiction to modify Father's visitation, Tenn.Code Ann. § 36–6–229 allows a Tennessee court to register a foreign decree regarding child custody. Therefore, we hold that the portion of the Trial Court's judgment registering the September 9, 2003, judgment of the Ohio Court is affirmed, but the remainder of the Trial Court's judgment is vacated.

### III. Conclusion

After careful review, we find that the Trial Court erred by overruling Father's Rule 60.02 Motion on the basis that it was not timely filed, and we reverse the Trial Court's order to that effect. We also find that Father is entitled to Rule 60.02 relief because the portion of the Trial Court's May 24, 2005, judgment modifying Father's visitation and adopting a new permanent parenting plan is void for lack of subject matter jurisdiction. Therefore, we hold that the Trial Court did not err in

registering the Ohio Court's September 9, 2003, judgment, and we affirm that portion of the Trial Court's judgment. However, because the Trial Court lacked jurisdiction to modify the Ohio Court's custody determination, we vacate the remainder of the Trial Court's judgment adopting a new permanent parenting plan, modifying Father's co-parenting time, and ordering Father to pay court costs and $1,500 of Mother's attorney fees. We remand to the Trial Court for collection of costs below. Costs on appeal are taxed against the Appellee, Jessica N. Kelso.